1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     CESAR N. HERNANDEZ,                         No.  2:19-cv-2195 MCE DB P

12                     Plaintiff,

13           v.                                    FINDINGS AND RECOMMENDATIONS

14     A. CONSTABLE, et al.,

15                     Defendants.

16

17           Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18    action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges defendants were deliberately indifferent to

19    his serious medical needs.  Before the court is defendants' motion for summary judgment.  For

20    the reasons set forth below, this court will recommend defendants' motion be denied.

21                                          **BACKGROUND**

22           This case is proceeding on the Eighth Amendment claims in plaintiff's first amended

23    complaint ("FAC").[1]  (ECF No. 13.)  In the FAC, plaintiff alleges the following.  He suffers from

24    a severe form of hypertension.  In March 2018,[2] he was taking prescribed medication daily at

25    
-----------------------

26    [1] The court dismissed plaintiff's claims regarding his placement in Administrative Segregation
      ("Ad Seg").  (See ECF Nos. 14, 22.)  This case is proceeding solely on plaintiff's Eighth
27    Amendment claims.

28    [2] All dates referred to herein occurred in 2018 unless otherwise specified.

                                                    1

4:00 p.m.  On March 9, defendant Correctional Office ("CO") Constable placed him in a holding cage, causing plaintiff to be unable to pick up his medication for hypertension from the pill line at 4:00 p.m.  While being held in the cage, plaintiff told Constable and defendants CO Sharma and CO Serwanga that he needed his prescribed medication to treat his hypertension.  However, each of these defendants refused to help him.  At 8:30 p.m. that day, plaintiff began to have severe chest pains, back/neck aches, blurry vision, dizziness, and near loss of consciousness.  He alleges that he begged defendants for help, but they continued to ignore him.  He did not get help until about 1:00 a.m. when a non-defendant officer called for medical help.  Plaintiff's blood pressure was extremely high and he was "rushed" to the medical clinic.  As a result of the delay in his medication, plaintiff suffered severe chest pains, dizziness, blurred vision, and aches.  He seeks damages and declaratory relief.[3]

On September 24, 2021, defendants moved for summary judgment.  (ECF No. 76.) Defendants argue the undisputed facts show they were not deliberately indifferent to plaintiff's medical needs and that they are entitled to qualified immunity.  Plaintiff filed an opposition (ECF No. 91) and defendants filed a reply (ECF No. 94).

**MOTION FOR SUMMARY JUDGMENT**

**I.  Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

---

[3] As discussed below, plaintiff's allegations in the FAC, statements in his opposition to the motion for summary judgment, and testimony at this deposition differ in some respects.  The allegations summarized here are those made in the FAC.

answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d

407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**II.  Legal Standards for Eighth Amendment Medical Claims**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual

1   punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

2   Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

3   Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

4   and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited

5   by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

6       What is needed to show unnecessary and wanton infliction of pain "varies according to

7   the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

8   (citing Whitley, 475 U.S. at 320).  In order to prevail on a claim of cruel and unusual punishment,

9   however, a prisoner must allege and prove that objectively he suffered a sufficiently serious

10  deprivation and that subjectively prison officials acted with deliberate indifference in allowing or

11  causing the deprivation to occur.  Wilson, 501 U.S. at 298-99.

12      For an Eighth Amendment claim arising in the context of medical care, the prisoner must

13  allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

14  serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has two

15  elements: "the seriousness of the prisoner's medical need and the nature of the defendant's

16  response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

17  other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

18      A medical need is serious "if the failure to treat the prisoner's condition could result in

19  further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974

20  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

21  "the presence of a medical condition that significantly affects an individual's daily activities."  Id.

22  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

23  objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S.

24  825, 834 (1994).

25      If a prisoner establishes the existence of a serious medical need, he must then show that

26  prison officials responded to the serious medical need with deliberate indifference.  See Farmer,

27  511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,

28  delay, or intentionally interfere with medical treatment, or may be shown by the way in which

prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06; see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**III.  Material Facts**

Defendants filed a Statement of Undisputed Facts as required by Local Rule 260(a).  (ECF No. 76-2.)  Plaintiff's filing in opposition to defendant's motion for summary judgment fails to

1    comply with Local Rule 260(b).  Rule 260(b) requires that a party opposing a motion for

2    summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and

3    admit those facts that are undisputed and deny those that are disputed, including with each denial

4    a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer,

5    admission, or other document relied upon in support of that denial."  Plaintiff's opposition to the

6    summary judgment motion consists of a brief, a "Statement of Undisputed Facts and Violation of

7    Federal Rule P. under Rule 56(d)(2)," and a request for discovery.[4]  (ECF No. 91.)

8         Defendants argue that factual statements plaintiff makes in his opposition brief may not be

9    considered as evidence because plaintiff did not sign his opposition under oath.  As discussed

10   below, the material factual statements plaintiff makes in his opposition also appear in either his

11   FAC or in his deposition testimony.  Any statements unique to the opposition brief would not

12   affect this court's consideration of plaintiff's claims.

13        In light of plaintiff's pro se status, this court has reviewed plaintiff's sworn filings in an

14   effort to discern whether he denies any material fact asserted in defendants' statement or has

15   shown facts that are not opposed by defendants for purposes of their motion.  This process has

16   proved somewhat difficult in this case because some of plaintiff's allegations have not been

17   consistent.

18        **A.  Plaintiff's Allegations and Testimony**

19        Plaintiff's sworn statements in his FAC, statements made in the arguments in his

20   opposition to defendants' motion, and deposition testimony differ from each other in several

21   respects.  Below, this court summarizes the statements in each filing.  This court also notes that,

22   in his FAC and opposition to the summary judgment motion, plaintiff also describes the events

23   that led to his placement in Ad Seg.  The court dismissed plaintiff's claims regarding his

24   placement in Ad Seg.  (See ECF Nos. 14, 22.)  This case is proceeding solely on plaintiff's Eighth

25   ////

26

27   [4] Because this court recommends denial of defendants' motion, the request for discovery is not
     addressed herein.  If plaintiff feels he still requires discovery, he may seek it after the final
28   resolution of defendants' motion.

Amendment claims.  Herein, this court considers only facts related to the Eighth Amendment claims.

### 1.  Allegations of the FAC

In his FAC, plaintiff alleges the following.  (ECF No. 13.)  He suffers from a severe form of hypertension.  In March 2018, he was taking prescribed medication for both hypertension and prostate problems.[5]  Plaintiff obtained his medication for hypertension from the "pill line" each day at 4:00 p.m. and took the medication at that time.  On March 9, "prior to pill line," defendant Correctional Office ("CO") Constable "took actions against plaintiff that w[ere] later determined to be without cause."

Plaintiff was "locked in a cage."  He repeatedly told Constable and defendants CO Sharma and CO Serwanga that he needed his prescribed medication to treat his hypertension.  However, each of these defendants disregarded him "for hours."

At 8:30 p.m. that day, plaintiff began to "feel his hypertension get out of control."  He begged defendants for his medication but they continued to disregard him.  Plaintiff began to suffer severe chest pains, back/neck aches, blurry vision, dizziness, and near loss of consciousness.  He contends he was denied medical care for nine hours.

Plaintiff told defendants that he took medication at 4:00 p.m. for hypertension, that he needed the medication to control his hypertension, that his symptoms were getting "out of control," that he was in pain, and that he needed medical attention.

Plaintiff did not get help until about 1:00 a.m. when a non-defendant officer called for medical help.  Plaintiff's blood pressure was "alarmingly high" and he was "rushed" to the "clinic."  As a result of the delay in taking his medication, plaintiff suffered severe chest pains,

////

---

[5] As defendants point out, plaintiff does not allege in the FAC that he asked defendants for prostate medication.  Because that potential claim was not raised in the FAC, it is not a claim considered here.  Even if it could be considered, plaintiff fails to make any showing that the symptoms he experienced after he was placed in a holding cell were related to a need for his prostate medication.  The same is true for plaintiff's statements in later filings that he was deprived of durable medical equipment.  This court considers below only plaintiff's claim that he was denied his blood pressure medication.

dizziness, blurred vision, and aches.  Plaintiff also suffered long-term consequences, including vision problems.

### 2. Allegations in Plaintiff's Opposition

Plaintiff describes the following facts as the basis for his claims.  (ECF No. 91.)  On March 9 at 8:30 p.m., defendant Constable placed plaintiff in a holding cage in the EOP Clinic. Plaintiff immediately asked Constable for his blood pressure and prostate medications because Constable had confiscated those medications from plaintiff's cell.  Plaintiff's medication was designated "keep on person" ("KOP").  Plaintiff begged all three defendants for his medications constantly until 12:30 a.m. on March 10 when plaintiff began to have severe chest pain, among other things.  Another officer summoned medical help for plaintiff and he was treated around 1:00 a.m.

### 3. Plaintiff's Deposition Testimony

At his deposition, plaintiff testified as follows.  He was handcuffed by two non-party officers at 4:00 p.m. on March 9.  (P Depo. at 36, 43, 86.[6])  Plaintiff recognized that he had written that he was cuffed at 8:00 p.m. on his grievance form.  The time on the grievance form was a mistake.  (Id. at 43- 44.)  The two officers took plaintiff from his cell and placed plaintiff in a holding tank in B Unit.  (Id. at 40.)  At that time, plaintiff's medications were in his cell.  (Id. at 85.)  Plaintiff did not ask these non-party officers for his medication because he didn't know then that he would be taken to Ad Seg.  (Id. at 86, 88.)

With the exception of his mental health medication, plaintiff's medications were designated "keep-on-person" ("KOP").  Plaintiff got his mental health medication from the pill line.  (Id. at 27, 86.)  He was able to get the mental health medication before he was handcuffed.  (Id. at 86.)  Plaintiff typically took his blood pressure medication between 6:00 and 8:00 p.m.  (Id. at 25-26, 103.)

////

////

---

[6] Defendants lodged a complete copy of plaintiff's deposition with the court.

Plaintiff identifies Constable as the one who "took" plaintiff's medications because Constable ordered plaintiff to be placed in Ad Seg and it is prison practice that officers box up a prisoner's possessions when the prisoner is placed in Ad Seg.  (P Depo. at 27, 103-04.)

At about 8:00 p.m., plaintiff was taken from the B Unit holding tank to the E Clinic.  (P Depo. at 36, 50, 88.)  He did not speak with defendants Serwanga and Sharma between 4:00 and 8:00 p.m. because they worked in E Clinic.  (Id. at 46-47, 90-91.)  Plaintiff testified that he did not think he spoke with Constable during that time, testified that he did not recall whether he did, and also testified that he tried to get Constable's attention, but Constable ignored him.  (Id. at 46-47, 89.)

When plaintiff arrived at the E Clinic, Constable read plaintiff his Miranda rights and then questioned him about the events that led him to be taken from his cell.  (P Depo. at 48, 90-91.)  Constable placed plaintiff in a holding cell in the E Clinic.  After plaintiff was placed in the E Clinic holding cell, he asked Constable for his medications three, four, or five times.  (Id. at 48-49, 92.)  Constable ignored him.  (Id. at 92.)  Plaintiff saw defendants Sharma and Serwanga after 8:00 p.m. when he was at the E Clinic.  (Id. at 50-51.)

Around 8:30 p.m., plaintiff began to feel his hypertension get out of control.  He did not deny that he knew it was happening before he saw the nurse at 9:05 p.m.  (P Depo. at 99-100.)

Plaintiff was seen by a nurse at 9:05 p.m. while he was in the E Clinic holding cell.  (P Depo. at 39, 52.)  He did not tell the nurse he needed his medication because the officer "stole them" and because he thought the officers told the nurse he needed them.  He also testified that he may have told the nurse about his medications but did not recall.  (Id. at 53.)  The nurse only asked him if he understood why he was being held.  (Id. at 52, 53.)

Plaintiff was also seen by a lieutenant when he was in the holding cell.  (P Depo. at 53.)  The purpose of that visit was to "brief" plaintiff.  Plaintiff asked the lieutenant why he was going to Ad Seg.  However, plaintiff did not ask the lieutenant for his medication.  (Id. at 53-54.)

Plaintiff could not recall whether he spoke to Constable about his medication before or after he was seen by the nurse at 9:05 p.m.  (Id. at 93.)  He spoke to all three defendants about his medication after he was placed in the E Clinic holding cell.  (P Depo. at 93-96.)  Plaintiff gave

10

conflicting testimony about whether he identified the medication he needed.  He testified that he did not identify it (id. at 95), told the defendants he needed blood pressure medication (id.), and told Constable he needed his medications for blood pressure and prostate (id. at 96).

Between 10:00 p.m. and 11:30 p.m. on March 9, Constable and other officers escorted plaintiff to Ad Seg.  (P Depo. at 74, 96-97, 106-07.)  Once he was placed in Ad Seg, plaintiff had no further contact with defendants.  (Id. at 106-07.)

After the officer called for medical help, two nurses arrived at plaintiff's cell.  They took his blood pressure twice.  It was very high – 205/120 the first time and 190/110 the second time. The nurses gave him the medication for his prostate, tamsulosin, his high blood pressure medication, and an aspirin.  They monitored him for the next 48 hours.  (P Depo. at 76-77.)

Plaintiff has never been told by a doctor that he has any injuries as the result in the delay in his medication on March 9, 2018.  However, plaintiff testified that he has not seen a doctor about his prostate or eye problems and would be doing so shortly.  (P Depo. at 81, 113.)  His eyesight is worse since the March 9/10 incident.  (Id. at 65-66, 81-83, 113.)  His prostate "was not the same."  (Id. at 113.)  His prostate medication dosage has doubled since the March 2018 incident.  (Id. at 114.)  Plaintiff also repeated that his injuries include almost having a stroke and almost dying.  (Id. at 115.)

**B. Undisputed Material Facts**

Considering plaintiff's various versions of the events, this court has attempted to discern the undisputed facts.  Disputed facts are addressed in the next section.

- During the events at issue in this case, plaintiff was housed at California Health Care Facility ("CHCF").  (Defs' Stmt. Undisputed Facts ("DSUF"), ECF No. 76-2, ¶ 1.)

- During the events at issue in this case, defendants Constable, Serwanga, and Sharma were employed as correctional officers at CHCF.  (DSUF ¶¶ 3-5.)

- On March 9, defendants Constable and Sharma worked during third watch 2:00 p.m. to 10:00 p.m.  Records provided by defendants show that Sharma worked overtime – until 12:15 a.m.  (ECF No. 76-5 at 5.)

- Plaintiff has a medical history of hypertension, or high blood pressure.  (DSUF ¶ 7.)
- During the month of March 2018, plaintiff was prescribed two blood pressure medications to treat his hypertension, Lisinopril and Amlodipine.  (DSUF ¶ 8.)
- When a medication is designated KOP, the pharmacy dispenses a bottle of the medication for the patient to keep on their person and take on their own.  (DSUF ¶ 10.)
- On March 9, non-party correctional officers escorted plaintiff to a holding cell at Facility B.  (DSUF ¶ 21.)
- Plaintiff did not ask defendant Constable for his medications while he was in the holding cell at Facility B.  (DSUF ¶ 22; P Depo. at 46-47, 89.)
- Plaintiff was later escorted to the Facility E Clinic sometime after 8:00 p.m. on March 9.  (DSUF ¶ 23.)
- Plaintiff first asked defendants Constable and Sharma for his medications when he was at the Facility E Clinic.  (P Depo. at 50-51, 93-96.)
- Plaintiff told Constable and Sharma that his symptoms were getting "out of control" and that he was in pain.  (FAC (ECF No. 13).)
- A Registered Nurse visited plaintiff at around 9:05 p.m.  (DSUF ¶ 25; P Depo at 39, 52.)
- During the nurse's visit, plaintiff did not request his blood pressure medication from the nurse.  (DSUF ¶ 26.)
- During the nurse's visit, plaintiff never indicated to the nurse that he was experiencing physical symptoms as a result of not taking his medication.  (DSUF ¶ 27.)
- None of the defendants provided plaintiff with medications for his blood pressure on March 9 or 10.  (ECF No. 13.)
- None of the defendants summoned medical assistance for plaintiff on March 9 or 10.  (ECF No. 13.)

1  • Defendant Constable was one of the officers who transferred plaintiff to a cell in
2     Ad Seg between 10:00 p.m. and 11:44 p.m.[7]  (P Depo. at 74, 96-97, 106-07.)
3  • Plaintiff did not have any contact with defendants Constable, Serwanga, and
4     Sharma after he transferred to Ad Seg on March 9.  (DSUF ¶ 30.)
5  • Sometime between 12:30 a.m. and 1:00 a.m. on March 10, an officer summoned
6     medical help for plaintiff.  (ECF No. 13.)
7  • Plaintiff was examined by a nurse sometime before 1:30 a.m.  (DSUF ¶ 31.)
8  • The nurse gave plaintiff doses of Lisinopril, Amlodipine, and aspirin.  (DSUF ¶
9     35.)
10  • Plaintiff's medical records show that on March 10, he was seen for "chest pain,
11     medication not received."  (ECF No. 76-6 at 23.)  In response to the following
12     question on the form:  "Is This a High Risk Situation Where The Patient is
13     Confused/Lethargic/Disoriented or in Severe Pain/Distress?," the nurse wrote
14     "No."  (Id. at 27.)
15  • The nurse took plaintiff's blood pressure at that time.  The first test showed
16     205/120 and the second showed 190/110.  (P Depo. at 76-77.)
17  • On March 13, plaintiff had a telemedicine visit with a doctor.  In the progress
18     notes, the doctor recorded that on March 10, plaintiff's blood pressure was
19     "significantly elevated" and he experienced "chest discomfort."  The doctor further
20     noted that those problems had resolved after plaintiff restarted his blood pressure
21     medication and aspirin.  (ECF No. 76-6 at 30.)
22  • No doctor told plaintiff that his medical conditions became worse as a result of
23     delay in getting his medication on March 9/10.  (DSUF ¶ 44.)
24  ////
25  ////
26
27  [7] Plaintiff testified at his deposition that he thinks he was moved to Ad Seg between 10:00 p.m. and 11:30 p.m. on March 9.  (P Depo. at 74, 96-97, 106-07.)  Defendants present a copy of plaintiff's bed assignments which shows that plaintiff was assigned a bed in Ad Seg at 11:44 p.m.
28  (See ECF No. 76-5 at 10.)

13

1   **C. Disputed Facts**

2       The parties dispute several facts.  Some are material.  Some are not.

3       **1.  Did Defendant Serwanga Work on March 9, 2018?**

4       Plaintiff contends that he asked Serwanga for his medications when plaintiff was in the E

5   Clinic on March 9.  Defendants repeatedly assert, and contend it is undisputed, that Serwanga was

6   not working on March 9.  (ECF No. 76-3 at 6, 12; ECF No. 76-2 at 2.)  Defendants' assertions are

7   not supported by the evidence they provide.  The employee time records provided by E.

8   Takehara, the litigation coordinator at CHCF, are only for third watch – 2:00 p.m. to 10:00 p.m.

9   (See ECF No. 76-5 at 4-8.)  Those records show that Constable worked during third watch on

10  March 9 and that Sharma worked from 2:00 p.m. on March 9 until 12:15 a.m., presumably on

11  March 10.  (ECF No. 76-5 at 5.)  Defendants provide no records for the first watch – 10:00 p.m.

12  to 6:00 a.m.  Therefore, defendants have no evidentiary support for their assertion that Serwanga

13  did not work March 9.  In his sworn testimony and in his FAC, plaintiff states that Serwanga

14  worked in the E Clinic on March 9.  For purposes of considering defendants' motion, this court

15  finds it undisputed that Serwanga worked on March 9 at some point after 8:00 p.m. and

16  encountered plaintiff between that time and the time plaintiff was transferred to Ad Seg.

17      **2.  When was Plaintiff Placed in a Holding Cell?**

18      The parties differ about when plaintiff was taken to a holding cell on March 9.  Plaintiff

19  states it was 4:00 p.m. and defendants' records show it was 7:45 p.m.[8]  (ECF No. 13; P Depo. at

20  36, 43, 86; ECF No. 76-5 at 12.)  Regardless of the time plaintiff was placed in the B Unit

21  holding cage, he testified that, at most, he tried to get Constable's attention while he was in that

22  holding cage.  Plaintiff does not show that he asked any of the three defendants for his medication

23

---

24  [8] Defendants note that plaintiff has also stated he was placed in a holding cell at 8:00 p.m.  It is
    true that in his opposition brief, plaintiff describes the time as 8:00 p.m.  (See ECF No. 91 at 3.)

25  Defendants cite case law that plaintiff cannot create an issue of fact through an affidavit
    contradicting prior testimony.  (See ECF No. 94 at 4.)  However, as noted above, plaintiff's

26  opposition brief is not sworn and therefore does not have the evidentiary value of plaintiff's
    sworn FAC and deposition testimony.  Further, the timing of plaintiff's placement in the holding

27  cell is already an issue of fact because the parties dispute whether it occurred at 4:00 p.m. or 8:00

28  p.m.

14

1  between 4:00 and about 8:00 when, it is not disputed, he was transferred to the E Clinic.  (See P

2  Depo. at 46-47, 89.)  Here plaintiff alleges he told defendants that he needed his medications only

3  after he was transferred to E Clinic.  Therefore, a dispute about when he was initially handcuffed

4  and taken to a holding cage or cell is not material for purposes of this court's analysis of

5  defendants' motion.

6              **3.  What Sort of Evaluation Did the Nurse Conduct at 9:05 p.m.?**

7          Plaintiff testified that the nurse only asked him if he understood why he was being held.

8  (P Depo. at 52, 53.)  Defendants contend the nurse "medically cleared [plaintiff] for placement in

9  administrative segregation."  (ECF No. 76-3 at 7.)  They further assert that "[t]he nurse

10 determined at that time that there was nothing medically wrong with Plaintiff."  (ECF No. 76-3 at

11 17.)

12         Defendants, again, misstate the evidence that they provided.  Attached to the Declaration

13 of B. Feinberg is a copy of the nurse's report from the 9:05 p.m. visit.  (ECF No. 76-6 at 22.)  The

14 report, on form #7219, is entitled "Medical Report of Injury or Unusual Occurrence."  In the

15 section entitled "Reason for Report," the box for "Unusual Occurrence" is checked.  That section

16 also includes a box for "Pre Ad/Seg Admission."  The "Pre Ad/Seg Admission" box is not

17 checked.

18         The nurse wrote that when plaintiff was asked about the "circumstances of the injury or

19 unusual occurrence," plaintiff replied "I do not know."  In the section entitled "Injuries Found?,"

20 the nurse checked the box "yes" and noted "slight redness" on plaintiff's right wrist due to

21 cuffing.  The nurse recorded no other injuries.  Nor does the report contain any other information

22 about the state of plaintiff's health.

23         This exhibit does not support defendants' claims that the nurse determined there was

24 "nothing" wrong with plaintiff or that the examination resulted in a medical clearance for plaintiff

25 to be transferred to Ad Seg.  The exhibit supports only the undisputed fact that a nurse saw

26 plaintiff at 9:05 p.m. on March 9 and noted slight redness on plaintiff's wrist.

27 ////

28 ////

1    **IV.  Analysis**

2         To prove an Eighth Amendment violation, plaintiff must establish that he had a serious

3    medical need and that defendants responded to that need with deliberate indifference.  McGuckin,

4    974 F.2d at 1059.  To prove that a delay in medical care violated the Eighth Amendment, plaintiff

5    must also show that he suffered injury as a result of defendants' conduct.  Id.

6         **A.  Issues of Material Fact regarding Plaintiff's Serious Medical Need**

7         A medical need is serious "if the failure to treat the prisoner's condition could result in

8    further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974

9    F.2d at 1059 (quoting Estelle, 429 U.S. at 104).

10               Examples of serious medical needs include "[t]he existence of an
                 injury that a reasonable doctor or patient would find important and
11               worthy of comment or treatment; the presence of a medical condition
                 that significantly affects an individual's daily activities; or the
12               existence of chronic and substantial pain."

13   Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting McGuckin, 974 F.2d at 1059-60);

14   see also Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (same (citing McGuckin, 974

15   F.2d at 1059-60)).

16        Defendants challenge the seriousness of plaintiff's medical need.  Defendants first argue

17   that plaintiff had access to his blood pressure medications prior to the time he was placed in a

18   holding cell.  This court is unable to determine the relevance of that point.  Even if plaintiff

19   should have, and failed to, take his medications prior to the time he was placed in a holding cell,

20   that does not mean he did not require them later to avoid serious harm.  Nor does it mean

21   defendants would somehow be relieved of liability if they were aware of plaintiff's failure to

22   timely take his medication.[9]

23        Defendants next argue there is no medical evidence that plaintiff suffered any serious

24   medical need after being placed in a holding cell.  The symptoms plaintiff was actually suffering

25   at that time are not necessarily determinative of that question.  If plaintiff had a medical condition

26   that could, if untreated, cause significant harm, then his condition was sufficiently serious under

27

28   [9] Defendant do not show that they were aware of this fact.

1   the Eighth Amendment.  See Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002); see also

2   Brooks v. Kolender, 362 F. App'x 735, 736 (9th Cir. 2010) (Plaintiff failed to show a triable issue

3   of material fact because he did not "demonstrate that his problem was so severe that a delay in

4   treatment could cause significant harm, or that defendants should have known this to be the case."

5   (citing Hallett, 296 F.3d at 744) (emphasis added)).

6          Plaintiff's medical need would also be sufficiently serious if he was at that time suffering

7   an injury that "a reasonable doctor or patient would find important and worthy of comment or

8   treatment;" or that  "significantly affect[ed]" his "daily activities;" or that was causing "chronic

9   and substantial pain."  Lopez, 203 F.3d at 1131.

10          Defendants argue that the symptoms plaintiff was suffering at the time were not

11  sufficiently serious.  The evidence defendants present is not dispositive.  They show that plaintiff

12  claims to have started suffering symptoms around 8:30 p.m. but failed to tell the nurse at 9:05

13  p.m. that he was experiencing symptoms or that he required his medication.  Those facts go to the

14  credibility of plaintiff's claim that his symptoms started at 8:30 p.m. and plaintiff's description of

15  his concern about the lack of his medication.  Whether plaintiff began experiencing symptoms at

16  8:30 p.m., the severity of his symptoms at that time, and plaintiff's concern about the lack of

17  medication are questions for a fact-finder to resolve.  Moreover, the fact that plaintiff may not

18  have been experiencing symptoms at 8:30 p.m. or 9:05 p.m. does not mean he did not suffer

19  symptoms later and before he was transferred to Ad Seg.

20          Defendants do not address the question of whether plaintiff's hypertension was, itself, a

21  serious medical need and the delay in getting care could have caused plaintiff serious harm.  It is

22  not disputed that plaintiff had hypertension that required medication.  This fact alone may be

23  sufficient to show that plaintiff's medical need was serious.  It is also not disputed that by about

24  1:00 a.m., plaintiff had "significantly elevated" blood pressure.  As illustrated by the doctor's

25  notes, the delay in treating plaintiff's condition was "worthy of comment or treatment."  Lopez,

26  203 F.3d at 1131.  Whether, and to what extent, plaintiff required treatment prior to that time is a

27  question for a factfinder.

28  ////

17

**B. Issues of Material Fact regarding the Harm Plaintiff Suffered.**

Defendants argue there is no medical evidence plaintiff suffered "severe" chest pain or any other physical problems as a result of the delay in his medication. Defendants further argue that plaintiff fails to show any of his medical conditions were exacerbated by the delay. Defendants cite <u>Hallett</u> for the proposition that the harm a plaintiff suffers must be "significant." Defendants misread <u>Hallett</u>. The court in that case considered whether the plaintiff class had shown that delays in dental care violated the Eighth Amendment. The court held the plaintiffs failed to show the delays "would cause significant harm and that defendants should have known that to be the case." Thus, the court was considering the seriousness of the plaintiffs' medical needs, not the injury actually suffered by the plaintiffs.

Plaintiff was being treated by a doctor for his high blood pressure and states that he suffered pain and dizziness due to the delay in his medication. This evidence is sufficient to create an issue of fact that plaintiff suffered harm as the result of defendants' conduct. Plaintiff need not show that defendants' conduct resulted in "severe," "substantial," or long-lasting harm. <u>McGuckin</u>, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary."); <u>see also</u> <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012) (same (citing <u>McGuckin</u>, 974 F.2d at 1060)); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (same).

**C. Issues of Material Fact regarding Defendants' Deliberate Indifference**

Plaintiff has given conflicting, sworn, versions of several facts, including whether he obtained his blood pressure medications from the pill line or kept them in his cell and when he took those medications. Those various statements may cause a reasonable juror to question plaintiff's credibility. However, for purposes of summary judgment this court need not consider those factual conflicts. Those facts could be considered immaterial.

Defendants do not dispute, or have failed to provide competent evidence to dispute, the following material facts from plaintiff's sworn FAC and deposition. Unless otherwise noted, these events occurred on March 9.

////

18

1. Between about 8:00 p.m. and sometime after 10:00 p.m. and before 11:44 p.m. plaintiff was in a holding cell.

2. Plaintiff told defendant Constable three to five times between 8:00 p.m. and 10:00 p.m., when Constable's shift ended, that he needed his blood pressure medication.

3. After 8:00 p.m. and before he was transferred to Ad Seg, plaintiff told defendants Sharma and Serwanga that he needed his medication.

4. Plaintiff told all three defendants that his symptoms were getting out of control, that he was in pain, and that he needed medical attention.

5. None of the defendants provided plaintiff with his medications.

6. None of the defendants called for medical assistance for plaintiff.

7. Plaintiff did not receive his medications until after 12:30 a.m. on March 10.

These facts provide evidence that defendants were deliberately indifferent to plaintiff's serious medical needs. Deliberate indifference can be established by showing "(a) a purposeful act or failure to respond to a prisoner's pain or medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted); see also Colwell, 763 F.3d at 1066; Wilhelm, 680 F.3d at 1122.

If plaintiff repeatedly informed defendants that he did not have necessary blood pressure medication and that he was experiencing pain and other symptoms as a result of his inability to take that medication, then defendants should have known plaintiff's lack of medication was causing, or could cause, plaintiff potentially serious harm. Nonetheless, defendants did not provide plaintiff with his medication or obtain medical assistance for him.

Defendants argue they were entitled to rely on the fact a nurse saw plaintiff at 9:05 p.m. and determined nothing was wrong. However, defendants make no showing that they were aware of the nurse's visit or conclusions. Further, there is no evidence that the nurse determined nothing was wrong. The nurse's visit adds to, rather than resolves, the factual disputes regarding the reasons for defendants' conduct.

Defendants also state, without any support, that "[p]laintiff's alleged chest pain only manifested after he had transferred to administrative segregation." Plaintiff was not transferred to

19

1   Ad Seg until sometime after 10:00 p.m. and before 11:44 p.m.  Even if a juror might doubt

2   plaintiff's claim of the onset of his chest pain based on plaintiff's admission that he did not tell

3   the nurse about it at 9:05 p.m., plaintiff states that his pain and symptoms increased throughout

4   the night.  Defendants present no undisputed evidence that between 9:05 p.m. and the time

5   plaintiff was transferred to Ad Seg, plaintiff did not suffer serious symptoms.  To the extent

6   defendants rely on the notes of medical staff when plaintiff was seen after 12:30 a.m., those notes

7   are not dispositive.  Rather, they are evidence to be considered by a factfinder to resolve the

8   question of the extent of plaintiff's symptoms.  Defendants fail to show plaintiff cannot prove

9   they acted with deliberate indifference.

10  **V.  Qualified Immunity**

11          Defendants also argue that they are entitled to qualified immunity.  Government officials

12  enjoy qualified immunity from civil damages unless their conduct violates clearly established

13  statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

14  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

15  immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in

16  the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

17  statutory or constitutional right; and (2) whether the right at issue was "clearly established."

18  Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223

19  (2009) (the two factors set out in Saucier need not be considered in sequence).  "Qualified

20  immunity gives government officials breathing room to make reasonable but mistaken judgments

21  about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).  The existence of

22  triable issues of fact as to whether prison officials were deliberately indifferent does not

23  necessarily preclude qualified immunity.  Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053

24  (9th Cir. 2002).

25          Defendants contend they are entitled to qualified immunity because plaintiff has not

26  sufficiently shown defendants violated his Eighth Amendment rights and because those rights

27  were not clearly established.  Defendants argue both contentions by construing the disputed facts

28  in their favor.  First, as discussed above, there are disputes of material fact regarding plaintiff's

claim.  And, considering plaintiff's assertions in the most favorable light, a jury could find that defendants' conduct violated plaintiff's rights.  Second, defendants fail to show plaintiff's Eighth Amendment right to medical care was not clearly established.

Defendants' argument is based on their unsupported assertion that they knew about the nurse's examination of plaintiff at 9:05 p.m. and that the nurse concluded nothing was wrong with plaintiff.  Again, there are disputes regarding these facts.  Defendants fail to show that undisputed facts demonstrate that plaintiff cannot succeed on his claim.  Nor do they show that a "reasonable official" would not have understood that their conduct violated the Eighth Amendment.  See Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011).  Defendants are not entitled to the protection of the qualified immunity doctrine on summary judgment.

**VI.  Conclusion**

Defendants have made little effort to present the court with undisputed facts showing that plaintiff cannot succeed on his claims.  Rather, the evidence presented by defendants supports a conclusion that there are genuine disputes of material facts.  Defendants have not borne their burden of demonstrating they are entitled to judgment as a matter of law.

For the foregoing reasons, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 76) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 26, 2022

DLB:9/DB prisoner inbox/civil rights/S/hern2195.msj fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

21